IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| SUNTRUST MORTGAGE, INC., )<br>　　　　　　　　　　　　　　　　　)<br>　　　　Plaintiff, 　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>v.　　　　　　　　　　　　　　　　)　　Case No.: 3:11CV597<br>　　　　　　　　　　　　　　　　　)<br>PREMIER HOME MORTGAGE, INC. )<br>　　　　　　　　　　　　　　　　　)<br>　　　　Defendant.　　　　　　　　)　| |

**SUNTRUST MORTGAGE, INC.'S PROPOSED
FINDINGS OF FACT AND CONCLUSIONS OF LAW**

　　　The Plaintiff, SunTrust Mortgage, Inc. ("SunTrust"), by counsel, submits the following proposed findings of fact and conclusions of law for consideration by the Court:

Proposed Findings of Fact

**A.　　Jurisdiction and Venue**

　　　1.　　　SunTrust is a Virginia corporation, and Premier is a South Dakota corporation. Pl.'s Compl. ¶¶ 1, 2; Def.'s Answer ¶¶ 1, 2.

　　　2.　　　There is diversity of citizenship between SunTrust and Premier. Joint Stipulation of Uncontroverted Facts ("Joint Stipulation") ¶ 2.

　　　3.　　　The amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs. Joint Stipulation ¶ 3.

　　　4.　　　The Mortgage Broker Agreement between the parties dated September 17, 2004 (the "Agreement") provides that jurisdiction and venue are proper in this Court.

### B. The Mortgage Broker Agreement

5. On September 17, 2004, SunTrust and Premier Home Mortgage, Inc. ("Premier") entered into the Agreement, a true copy of which is attached as Exhibit 1 to the Complaint filed in this action. Joint Stipulation ¶ 1.

### C. The Schiele Loan

6. On or about July 5, 2007, Daren Schiele ("Schiele"), purchased the real property located at 6354 Chantel Circle, Black Hawk, South Dakota 57718 (the "Schiele Property"). Joint Stipulation ¶ 4. The purchase price for the Schiele Property was $313,700.00.

7. In order to purchase the Schiele Property, Schiele applied for and received a mortgage loan through Premier on July 5, 2007, in the original principal amount of $313,700.00, which was secured by a mortgage on the Schiele Property (the "Schiele Loan"). Joint Stipulation ¶ 5.

8. The loan-to-value ratio ("LTV") for the Schiele Loan, which represents the amount of the mortgage loan as a percentage of the purchase price, was 100%.

9. Premier processed, originated and brokered the Schiele Loan to SunTrust. Joint Stipulation ¶ 6. Premier performed these functions pursuant to the Agreement which requires that loans conform to the requirements set forth in the Manual and the Agreement. Agreement ¶ 3.3. The Manual includes underwriting requirements for various loan products offered by SunTrust.

10. Schiele qualified for the loan product known as "Expanded Approval II." This was a loan product that was offered by Fannie Mae and one that SunTrust had the right to sell to Fannie Mae, if the loan met Fannie Mae underwriting requirements.

11. Fannie Mae uses an automated underwriting system called Desktop Underwriting to approve loans.

12. Premier had access to Desktop Underwriting, which it used for the Schiele loan. By using Desktop Underwriting, Premier could determine if Schiele would likely qualify for the Expanded Approval II loan product before it was submitted to SunTrust.

13. As part of the underwriting process for the Schiele Loan, Desktop Underwriter generated a set of conditions with which the Schiele Loan was required to comply in order to be approved for funding by SunTrust.

14. Compliance with the conditions set by Fannie Mae through Desktop Underwriter was also a requirement for the Schiele Loan to be eligible for sale to Fannie Mae by SunTrust.

15. Among these conditions, Desktop Underwriter required that mortgage insurance be obtained for the Schiele Loan because of its 100% LTV. Mortgage insurance is an insurance policy that compensates lenders and investors, in part, for losses they incur as the result of a default on the subject loan.

16. The requisite mortgage insurance for the Schiele Loan was obtained through Radian Guaranty, Inc. ("Radian").

17. Subsequent to the closing of the Schiele Loan, SunTrust sold the Loan to Fannie Mae.

18. Schiele's first loan payment was due on September 1, 2007; however, Schiele never made a payment on the Schiele Loan.

D. **Rescission of Mortgage Insurance for the Schiele Loan**

18. By letter dated October 15, 2009, Radian informed SunTrust that the mortgage insurance for the Schiele Loan would be rescinded (the "Notice of Rescission").

3

19. In support of this Notice of Rescission, Radian stated, among other things, that Schiele failed to disclose an automobile loan entered into prior to the closing of the Schiele Loan.

20. The Radian insurance policy reserved the right to rescind coverage based on a material misstatement, misrepresentation, or omission by Schiele in the application for the Schiele Loan.

21. This undisclosed automobile loan was a valid reason for the mortgage insurance for the Schiele Loan to be rescinded by Radian.

22. Upon receiving the Notice of Rescission, SunTrust conducted an investigation of the findings asserted by Radian and determined the following:

   a. On February 26, 2007, Schiele borrowed the sum of $33,808.93 from Chrysler Financial to purchase a 2006 Chrysler 300-C (the "Schiele Automobile Loan"). Joint Stipulation ¶ 8.

   b. The Schiele Automobile Loan was not disclosed to SunTrust prior to SunTrust's approval of the Schiele Loan. Joint Stipulation ¶ 9.

   c. The Schiele Loan was approved with a debt-to-income ratio ("DTI") of 40%. An individual's DTI represents the percentage of that individual's monthly gross income that goes to paying debt(s).

   d. When Schiele's DTI was calculated to include the Schiele Automobile Loan, the ratio increased to 45.53%.

23. One of the conditions for approval of the Schiele Loan was that the ratio of Schiele's total monthly debts to his total monthly income be at an acceptable level. Desktop Underwriter determined that Schiele's 40% DTI was acceptable.

24. When Fannie Mae issues an approval for a loan using Desktop Underwriter, the DTI for the loan may fluctuate by 2% without requiring resubmission of the loan package through Desktop Underwriter for loan approval.

25. The inclusion of the Schiele Automobile Loan as a debt of Schiele would cause an increase of over 5% in Schiele's DTI.

26. The Desktop Underwriter underwriting programs change over time, and SunTrust is unable to determine, after the fact, if a 2007 loan application that, in 2009, was properly understood to have a different DTI would have been approved originally.

27. Schiele's failure to disclose the Schiele Automobile Loan, and the fact that Desktop Underwriter changed over time, prevented SunTrust from determining if the Schiele Loan would have been approved with a DTI of 45.53%.

28. SunTrust considered whether any compensating factors, such as demonstrated payment history or borrower assets, would provide a basis to appeal Radian's Notice of Rescission.

29. Following its review, SunTrust determined that no such basis for appeal existed. Schiele had made no payments on the Loan and, at the time of closing, he possessed available assets only slightly in excess of the amount required by Desktop Underwriter to close the Schiele Loan.

  **E.**   **Fannie Mae's Demand for Indemnification**

30. On or about March 30, 2010, Fannie Mae demanded that SunTrust indemnify Fannie Mae for its losses related to the Schiele Loan due to the rescission of mortgage insurance on the Schiele Loan by the mortgage insurance carrier. Joint Stipulation ¶ 7.

31. Because Schiele failed to disclose the Schiele Automobile Loan, which resulted in the rescission of mortgage insurance on the Schiele Loan, SunTrust determined that it was required to make Fannie Mae whole for its losses related to the Schiele Loan.

32. Fannie Mae provided SunTrust with a Loss Reimbursement Statement for the Schiele Loan, which demonstrated that Fannie Mae had incurred a loss of $143,322.59 related to the Schiele Loan following foreclosure and liquidation of the Schiele Property.

33. On or about April 27, 2010, SunTrust paid Fannie Mae the sum of $143,398.63 in response to Fannie Mae's demand for indemnification with respect to the Schiele Loan. Joint Stipulation ¶ 10.

**F.   SunTrust's Demand for Indemnification**

34. By letter dated March 24, 2011, SunTrust demanded that Premier indemnify SunTrust for its losses associated with the Schiele Loan. Joint Stipulation ¶ 11.

35. Premier has refused to indemnify SunTrust.

<u>Proposed Conclusions of Law</u>

1. This is an action for breach of contract based on the Mortgage Broker Agreement entered into by SunTrust and Premier (together, the "Parties").

**A.   Jurisdiction and Venue are Proper**

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the Parties are citizens of different states – Virginia and South Dakota, respectively – and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Premier has admitted these allegations. Joint Stipulation ¶¶ 2 & 3.

3. Venue is also proper. In the Agreement, the parties consented to venue in this Court, and, "where the parties have previously agreed on a forum through a forum selection

6

clause, courts must 'enforce [a] forum clause specifically unless [the party avoiding enforcement can] clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" Precision Franchising, LLC v. Starr, 2006 U.S. Dist. LEXIS 59146, *3 (E.D. Va. Aug. 22, 2006) (quoting The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)). Neither party challenges the forum selection clause.

4. Virginia law governs this dispute. As a federal court sitting in diversity, this Court applies the choice of law rules of Virginia, the forum state, and "Virginia law looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 624 (4th Cir. 1999)

**B.    The Mortgage Broker Agreement is a Valid Contract**

5. "A contract is defined as 'an agreement between two or more persons which creates an obligation to do or not to do a particular thing.'" Buchanan v. Doe, 246 Va. 67, 72, 431 S.E.2d 289, 292 (1993) (quoting Black's Law Dictionary 322 (6th ed. 1990)). To constitute a valid contract, "there must be a complete agreement which requires acceptance of an offer . . . as well as valuable consideration." Montagna v. Holiday Inns, Inc., 221 Va. 336, 346, 269 S.E.2d 838, 844 (1980).

6. The Agreement satisfies these requirements: In exchange for a fee from SunTrust, Premier agreed to broker, process, and originate mortgage loans and to make certain representations and warranties with respect to those loans. See, e.g., Agreement ¶¶ 3.1, 3.3 & 6.

**C.    Schiele's Failure to Disclose the Schiele Automobile Loan Constituted a Breach of the Agreement**

7. To prevail in this breach of contract action, SunTrust is required to demonstrate the following: (1) a legally enforceable obligation of Premier to SunTrust; (2) Premier's breach

7

of that obligation; and (3) injury or damage to SunTrust caused by the breach of obligation.  See Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 615 (2004).

        I.     *Legally Enforceable Obligation*

8.     The Agreement is a legally enforceable contract between Premier and SunTrust. See Montagna, 221 Va. at 346, 269 S.E.2d at 844 (1980).

9.     Under the Agreement, Premier had the right, but not the obligation, to broker loans to SunTrust and SunTrust had the right, but not the obligation, to fund such loans for which SunTrust was required to compensate Premier.  Agreement ¶ 3.1.

10.     If Premier chose to broker a loan to SunTrust, Premier agreed to submit loans that complied with the requirements for that particular loan product as described in the Manual and did not violate the various representations and warranties of Premier about each loan that it brokered to SunTrust.  Agreement ¶ 3.3.

11.     Premier chose to broker the Schiele loan to SunTrust under the Agreement, and SunTrust funded the Schiele loan and paid Premier a fee for the Schiele loan in reliance on Premier's representations and warranties.

        II.     *Premier's Breach of its Obligation*

12.     "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." Countryside Orthopaedics, P.C. v. Payton, 261 Va. 142, 154, 541 S.E.2d 279, 285 (2001) (quoting Horton v. Horton, 254 Va. 111, 115, 487 S.E.2d 200, 204 (1997)).

13.     Under the Agreement, Premier represented and warranted that the Schiele Loan was "in full compliance with this Agreement and Lender's requirements" (¶9.1); contained only information that was "genuine, complete and accurate" (¶9.5); and was not affected by any

circumstances or conditions that could "adversely affect" the Loan's "value or marketability" (¶9.6).

14. Each of these representations and warranties is fundamental to the Agreement, as SunTrust relied on each promise, individually and collectively, in exchange for the price paid to Premier for the Schiele Loan.

15. Premier's brokering of the Schiele Loan, which failed to disclose the Schiele Automobile Loan, constituted a breach of the representations and warranties in ¶¶ 9.1, 9.5, and 9.6. Furthermore, this misrepresentation was the direct cause of Radian's decision to rescind mortgage insurance on the Schiele Loan, and the rescission of mortgage insurance was the basis of Fannie Mae's demand that SunTrust make it whole for its losses related to the Schiele Loan.

16. Premier's failure to indemnify SunTrust, as required by ¶ 15 of the Agreement, constitutes an additional material breach of the Agreement.

    III.    *Damage to SunTrust*

17. As a result of the breach of Premier's obligations under the Agreement, SunTrust was required to indemnify Fannie Mae for its losses from the Schiele Loan.

18. Specifically, SunTrust was damaged in the amount of $143,398.63, the sum that SunTrust transferred to Fannie Mae, on or about April 27, 2010, in response to Fannie Mae's make-whole demand.

19. Premier bears the burden of proving any contention that SunTrust failed to mitigate its damages. See Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc., 446 F. Supp. 2d 551, 576 (E.D. Va. 2006) ("An alleged failure to mitigate 'damages is an affirmative defense, and its burden is entirely on the contract breaker'") (quoting Foreman v. E. Caligari & Co., 204 Va. 284, 130 S.E.2d 447, 451 (1963)).

20. Because Fannie Mae requested that SunTrust make it whole for its losses stemming from the Schiele Loan, which followed the foreclosure and liquidation of the Schiele Property by Fannie Mae, SunTrust had no opportunity to mitigate its damages. Consequently, SunTrust could not fail to mitigate its damages.

**D.     The Agreement Requires Premier to Indemnify SunTrust for its Losses Related to the Schiele Loan**

21. Paragraph 15 of the Agreement demonstrates that Premier promised to hold SunTrust harmless for any losses resulting from a breach of a representation or warranty associated with the Schiele Loan. Premier is bound by this commitment. See Amos v. Coffey, 228 Va. 88, 92, 320 S.E.2d 335, 337 (1984) (explaining that "courts are bound to say that the parties intended what [their] written instrument plainly declares").

        I.     *SunTrust's Burden with Respect to Indemnification*

22. SunTrust was under no obligation, either legally or pursuant to the Agreement, to provide notice to Premier when it received the make-whole demand from Fannie Mae. See Chicago Title Ins. Co. v. IMG Exeter Assocs. Ltd., 1993 U.S. App. LEXIS 2052, *8, 12 (4th Cir. Feb. 8, 1993) (holding that "a defendant only need show potential (rather than actual) liability to recover indemnity where . . . the defendant's claim is based on a written contract of insurance or indemnification" and that "[t]he courts should be wary of imposing additional requirements on the parties' legitimate contractual bargain"); Southern Ry. Co. v. Arlen Realty and Dev. Corp., 220 Va. 291, 296, 257 S.E.2d 841, 844 ("Unless the contract of indemnity provides otherwise, the indemnitee's failure to give the indemnitor timely notice of and an opportunity to defend against the third party's claim does not bar recovery by the indemnitee against the indemnitor").

23. Similarly, SunTrust was under no obligation to provide notice to Premier when it received the Notice of Rescission from Radian.

24. When a party does not provide notice, it must demonstrate that its liability was reasonably incurred. See Chicago Title Ins. Co., 1993 U.S. App. LEXIS 2052 at *12 ("A court confronted with [a valid indemnity agreement] should insure that the claim was not frivolous, that the settlement was reasonable, that it was untainted by fraud or collusion, and that the indemnitee settled under a reasonable apprehension of liability;" see also Richardson v. Econo-Travel Motor Hotel Corp., 553 F. Supp. 320, 324 (E.D.Va. 1982) (recognizing an indemnitee's duty to show that a settlement was reasonable).

25. Furthermore, SunTrust is not required to prove actual liability to Fannie Mae, because "the existence of a valid indemnity agreement should ease the indemnitee's burden." Chicago Title Ins. Co., 1993 U.S. App. LEXIS 2052 at *12. Indeed, "to require the indemnitee to go farther and establish with certainty its actual liability is to rewrite the parties' indemnity agreement." Id.

26. By thoroughly reviewing the rescission of mortgage insurance for the Schiele Loan, upon which Fannie Mae's demand was based, and confirming the absence of grounds for appeal to Radian and Fannie Mae, SunTrust has demonstrated that its payment to Fannie Mae was reasonable.

    II.    *Obligation to Pay Attorney's Fees*

27. Furthermore, pursuant to ¶15 of the Agreement, SunTrust is entitled to an award of its attorneys fees related to this effort to enforce the Agreement. The payment of attorney's fees is an appropriate component of a contractual indemnification provision. See Richardson v. Econo-Travel Motor Hotel Corp., 553 F. Supp. 320, 324 (E.D.Va. 1982) (recognizing that the "clear language" of an indemnity clause allowed "recovery for the attorney's fees and expenses in connection with any claim").

### E. Conclusion

28. By brokering the Schiele Loan to SunTrust, Premier breached the provisions of the Agreement. Consequently, under ¶15 of the Agreement, Premier is obligated to indemnify SunTrust for both its losses stemming from the Schiele Loan and its expenses related to enforcing the Agreement.

Submitted April 9, 2012.

                                            SUNTRUST MORTGAGE, INC.

By:    */s/ Steven P. Gould*
Robert D. Perrow (VSB No. 14766)
J.P. McGuire Boyd, Jr. (VSB No. 72753)
Steven P. Gould (VSB No. 80411)
Williams Mullen
P.O. Box 1320
Richmond, Virginia 23218-1320
Telephone: 804.420.6000; Facsimile: 804.420.6507
Email: bperrow@williamsmullen.com
Email: mboyd@williamsmullen.com
Email: sgould@williamsmullen.com
*Counsel for Plaintiff SunTrust Mortgage, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Proposed Findings of Fact and Conclusions of Law was served through the Court's CM-ECF system on this 9th day of April, 2012 to:

>Kevin J. Funk, Esq.
>DurretteCrump, PLC
>Bank of America Center
>1111 East Main Street, 16th Floor
>Richmond, Virginia 23219
>kfunk@durrettecrump.com
>*Counsel for Premier Home Mortgage, Inc.*

>>*/s/ Steven P. Gould*
>>Steven P. Gould

17594034_2.DOC