IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| SUNTRUST MORTGAGE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:11CV597 |
| ) | |
| PREMIER HOME MORTGAGE, INC. ) | |
| ) | |
| Defendant. ) | |

**SUNTRUST MORTGAGE, INC.'S MEMORANDUM
IN OPPOSITION TO PREMIER'S MOTION *IN LIMINE*** 

The Plaintiff, SunTrust Mortgage, Inc. ("SunTrust"), by counsel, states the following in opposition to the Motion *in Limine* to Exclude Evidence of Mortgage Insurance Rescission as a Basis for Indemnification (the "Motion") offered by Defendant, Premier Home Mortgage, Inc. ("Premier"):

**Introduction**

Pursuant to the Mortgage Broker Agreement entered into by SunTrust and Premier, SunTrust's Complaint seeks indemnification from Premier for losses resulting from the breach of representations and warranties associated with a mortgage loan closed in SunTrust's name for Daren Schiele (the "Schiele Loan"). Pursuant to the Agreement, Premier represented and warranted, among other representations and warranties, that the application for the Schiele Loan contained no misrepresentations or omissions and that no circumstances existed that would subsequently render the Schiele Loan an unacceptable investment.

1

As a condition of approval set forth by the Federal National Mortgage Association ("Fannie Mae"), which operates the Desktop Underwriter program through which the Schiele Loan was submitted, the Schiele Loan was required to have mortgage insurance in the amount of 35%. SunTrust later determined that Schiele had failed to disclose a $33,808.00 automobile loan (the "Schiele Automobile Loan") that closed more than four months before the Schiele Loan. In addition to constituting a significant omission, Schiele's failure to disclose the loan rendered invalid the underwriting findings on which the Schiele Loan was based.[1]

Radian Guaranty, Inc. ("Radian") cited the failure to disclose the Schiele Automobile Loan in its notice of rescission of mortgage insurance for the Schiele Loan. As a direct result of this rescission of mortgage insurance by Radian, Fannie Mae demanded that SunTrust indemnify it for its losses related to the Schiele Loan. SunTrust incurred a loss when it made Fannie Mae whole pursuant to its demand.

## SunTrust's Complaint

Contrary to Premier's assertions, SunTrust's Complaint provides ample support for its contention that the rescission of mortgage insurance rendered the Schiele Loan an unacceptable investment, constituting a breach of the parties' Agreement and a ground for indemnification. The deviation from the pleadings alleged by Premier is merely an eleventh-hour red herring that distracts attention from the omission in the application for the Schiele Loan that resulted in SunTrust's subject loss.

---

[1] When Desktop Underwriter, Fannie Mae's automated underwriting system, approves a loan, the debt-to-income ratio ("DTI") for that loan may increase by up to 2% without affecting the loan's approval. However, if a DTI increases by more than 2%, the loan must be resubmitted to Desktop Underwriter to determine if it can still be approved for funding. Because the inclusion of the Schiele Automobile Loan would have increased Schiele's DTI by more than two points, the Schiele Loan was required to be resubmitted to Desktop Underwriter prior to funding.

2

In essence, Premier's Motion seeks to hold SunTrust to a higher pleading standard than the Federal Rules of Civil Procedure require. Rule 8(a) of the Federal Rules of Civil Procedure establishes a notice pleading standard and requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 575 (2007) (describing standard). SunTrust's Complaint meets and exceeds this important standard.

Furthermore, Rule 8(d)(2) of the Federal Rules of Civil Procedure allows SunTrust to "set out 2 or more statements of a claim" in a single count. Fed. R. Civ. P. 8(d)(2). Here, SunTrust alleges that the Schiele Automobile Loan resulted in a breach of two separate warranties and representations under the Agreement: paragraph 9.5 ("Accuracy of Application and Related Documentation") and paragraph 9.6 ("Acceptable Investment"). A breach of either warranty entitles SunTrust to indemnification pursuant to paragraph 15 of the Agreement.

Three consecutive paragraphs in SunTrust's Complaint explicitly reference or otherwise implicate the importance of the rescission of mortgage insurance to SunTrust's claim for indemnification. Paragraph 11 of the Complaint references the rescission of mortgage insurance in describing Fannie Mae's demand that SunTrust indemnify it for its losses related to the Schiele Loan:

> On or about March 30, 2010, Fannie Mae notified SunTrust of its obligation to indemnify Fannie Mae for its losses related to the Schiele Loan due to the rescission of mortgage insurance on the loan.

In paragraph 12, SunTrust alleges that "Schiele was obligated on a $33,808.00 automobile loan" and states further that Schiele's failure to disclose the loan was "a material false misrepresentation of his financial condition." As Premier is aware, Radian, in its notice rescinding the mortgage insurance for the Schiele Loan, cited the undisclosed Schiele

3

Automobile Loan in concluding that Schiele's "credit and financial profile were not accurately presented to the underwriter, which rendered the loan approval invalid." Pl.'s Ex. 7.

And in paragraph 13, in addition to alleging that the "Schiele Loan was made based on false, misleading, and incomplete information," SunTrust stated that "Premier had failed to ensure that the Schiele Loan constituted an acceptable investment." Under the Agreement, the breach of either of these warranties triggers Premier's obligation to indemnify SunTrust.

As Premier has learned through the discovery process, Desktop Underwriter approved the Schiele Loan for funding under the "Expanded Approval II" initiative. Fannie Mae's guidelines for such loans, which were available to Premier at the time of closing for the Schiele Loan, required 35% mortgage insurance for certain high-risk loans, like the Schiele Loan, with a 100% loan-to-value ratio ("LTV"). In fact, the Desktop Underwriter approval findings for the Schiele Loan explicitly require mortgage insurance as a condition for funding the Loan. If the conditions set forth by Desktop Underwriter are not satisfied at closing, or if conditions that must exist in fact lapse, a loan is no longer eligible for sale to Fannie Mae and is no longer an acceptable investment.

When the mortgage insurance for the Schiele Loan was subsequently rescinded, as a result of the previously undisclosed Schiele Automobile Loan, the Schiele Loan was no longer an acceptable investment to Fannie Mae. Consequently, Fannie Mae demanded that SunTrust indemnify it for its losses related to this loan, which SunTrust did.

While the representations and warranties in the Agreement do not contain the words "mortgage insurance," paragraph 9.6's requirement that a loan constitute an acceptable investment is drafted to encompass exactly such obligations without having to enumerate every possible scenario in which a loan would fail to remain an acceptable investment.

4

At trial, SunTrust's evidence will show the relationship between the requirement for mortgage insurance and the Agreement's acceptable investment warranty found in paragraph 9.6. While SunTrust's 2011 demand to Premier did not reference mortgage insurance, SunTrust is not bound by such demand. In fact, in that letter, SunTrust explicitly "reserve[d] the right to set forth and/or establish additional grounds for the demand" for indemnification. SunTrust has set forth such additional grounds through its Complaint.

**Premier's Extensive Discovery with Respect to the Rescission of Mortgage Insurance**

On multiple occasions, Premier has conducted discovery, or had the opportunity to conduct discovery but declined to do so, on aspects of mortgage insurance. Nonetheless, Premier attempts to blame SunTrust for its lack of understanding regarding SunTrust's grounds for indemnification with respect to the Schiele Loan.

As an initial matter, in its "Request for Designation of Corporate Witnesses," attached hereto as Exhibit 1, Premier identified "[t]he rescission of mortgage insurance related to the Schiele Loan" as the second of four topics for examination. As early as February 6, 2012, the date of Premier's "Request," Premier had focused on the importance of the rescission of mortgage insurance to SunTrust's claims. Counsel for Premier thoroughly deposed SunTrust's designee on this topic, Michael Knakal, and has designated seven substantial portions of Knakal's testimony for use at the trial of this matter. Def.'s Designation of Dep. Testimony pp.1-2. Premier's defense in this case thus relies, at least in part, on the rescission of mortgage insurance by Radian and SunTrust's analysis of that rescission.

In its Motion, Premier also appears to fault SunTrust for failing to reference the rescission of mortgage insurance in the answer to an interrogatory that did not implicate, directly or indirectly, this issue. Specifically, Premier's third interrogatory requested that SunTrust

5

"[s]tate all facts upon which you rely to support the allegation contained in paragraph 12 of the Complaint that the undisclosed loan 'represented a material difference in Schiele's financial circumstances, which would have prevented Schiele from qualifying for the Schiele Loan.'" Premier thus inquired about one of several allegations made by SunTrust regarding the effect of the Schiele Automobile Loan. Premier posed only five interrogatories to SunTrust and easily could have inquired about SunTrust's other allegations, such as the conclusion in paragraph 13 that the Schiele Loan was no longer an acceptable investment. However, Premier neglected or declined to pose such questions to SunTrust and, it would now appear, seeks to fault SunTrust for failing to volunteer information that was extraneous to the scope and substance of the interrogatory posed.

### **Premier Demonstrates No Prejudice**

Finally, Premier's claim of prejudice rings hollow. If Premier harbored concerns regarding the relationship between the rescission of mortgage insurance and its indemnification obligation under the Agreement, it was afforded ample opportunity to explore this issue. In its interrogatories, deposition topics, and even its prior motion for summary judgment, Premier declined to raise the specific concerns upon which this Motion rests.

### **Conclusion**

Despite Premier's contention to the contrary, SunTrust's Complaint meets and exceeds the notice pleading requirements of Rule 8(a) and includes ample information to place Premier on notice regarding the grounds for SunTrust's indemnification claim. Furthermore, Premier has had the opportunity to conduct substantial discovery on the topic of mortgage insurance rescission and its relationship to SunTrust's claim for indemnification.

Accordingly, Premier's Motion should be denied.

SUNTRUST MORTGAGE, INC.

By: */s/ Steven P. Gould*

Robert D. Perrow (VSB No. 14766)
J.P. McGuire Boyd, Jr. (VSB No. 72753)
Steven P. Gould (VSB No. 80411)
Williams Mullen
P.O. Box 1320
Richmond, Virginia 23218-1320
Telephone: 804.420.6000; Facsimile: 804.420.6507
Email: bperrow@williamsmullen.com
Email: mboyd@williamsmullen.com
Email: sgould@williamsmullen.com
*Counsel for Plaintiff SunTrust Mortgage, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Memorandum in Opposition to Premier's Motion in Limine was served through the Court's CM-ECF system on this 12th day of April, 2012 to:

Kevin J. Funk, Esq.
DurretteCrump, PLC
Bank of America Center
1111 East Main Street, 16th Floor
Richmond, Virginia 23219
kfunk@durrettecrump.com
*Counsel for Premier Home Mortgage, Inc.*

*/s/ Steven P. Gould*
Steven P. Gould

17594034_2.DOC